## IN RE PAVING FLOYD PARK ADDITION.

**MUNICIPAL CORPORATIONS:** Public Improvements—Waiver of 25 Per Cent Limitation. A special assessment for paving, made under a waiver by property owners of the statute which prohibits assessments in excess of 25 per cent of the value of the property, must be treated as a finality, in the absence of evidence that other property within the permissible zone of benefits was not assessed for its pro-rata share of the necessary and reasonable cost of the improvement.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assessment of River Bed. The failure, in proceedings for the pavement of a street, to assess a river bed belonging to a city will not work an invalidation of assessments made on other property, in the absence of evidence that the improvement benefited the said bed in excess of a mere nominal amount.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

DECEMBER 14, 1923.

REHEARING DENIED APRIL 4, 1924.

APPEAL by the city of Sioux City from a paving assessment, and cross-appeal by the Stock Yards Company, owner of the property assessed. The opinion sufficiently states the facts. The trial court reduced the assessment against the property involved, but refused to grant further relief, as prayed by the property owner.—*Reversed* on the city's appeal, and *affirmed* on the cross-appeal.

*Fred H. Free* and *E. G. Smith*, for appellant.

*Milchrist, Jepson, Pitkin & Jepson*, for appellee.

DE GRAFF, J.—This appeal involves the validity of an assessment by the city of Sioux City against certain property of the Sioux City Stock Yards Company, in the paving of what

1. MUNICIPAL CORPORATIONS: public improvements: waiver of 25 per cent limitation.

is called the "Floyd River Road" in said city. In 1921, the appellee, with others, filed a petition with the city council, praying for the paving in question, together with a waiver of the statutory limitation of 25 per cent of the actual value of the property benefited. Section 792-a, Code Supplement, 1913. The improvement was made, and an assessment of $19,052.61 was levied against Lots 8 and 9, Floyd Park Addition, owned by the appellee. Upon proper objections, an appeal was taken to the district court, and the assessments were reduced to $11,983.87. This is the basis for the appeal by the city. The original assessment was made in two zones: the first being 50 feet wide, and the second containing the rest of the assessable property.

Two primary objections were made to the assessment. First, that the assessment was made upon a narrow strip of ground east of the Floyd River and west of the pavement, about 900 feet long, and containing about 35,500 square yards not owned

by the company. Second, that the city of Sioux City is the owner of a strip of ground constituting the bed of the Floyd River, adjoining the paved street, 900 feet long and 120 feet wide, which is wholly omitted from the assessment.

It is necessary to briefly recite the geography of the situation. In 1903, the Floyd River, from the initial or north point of the pavement in question, ran in a northwesterly direction parallel to the improvement, for a short distance. In that year, the city changed the bed of the river, causing the Floyd to run in a southerly direction into the Missouri River. The land for this new channel, 120 feet wide, was deeded to the city by the appellee Stock Yards Company. This change necessitated a change in the public road along the river, and the land for road purposes was deeded to the city by Armour & Company. Such was the situation when the proposed improvement was ordered by the city.

We now pass for a moment to the method of assessment adopted by the city. The city engineer, who superintended the assessment, testified as follows:

"The first 50 feet abutting on the improvement was considered the first zone, and one half of the cost of the improvement was charged to the first 50 feet; the other half (second zone) was charged to a district beyond the first 50 feet, running back half way through the block, not to exceed 300 feet. There was no assessment made on the river itself. The river is about 120 feet wide. The first zone was figured on an area basis. We took the first 50 feet from the pavement as the first zone. Q. As a matter of fact, between the pavement and the river there is only a strip three or four feet wide? A. I doubt if there is any strip there at all. In running the first zone in that 700 feet along the river, we started in the river, to find the zone line. The zone line would come in the river. The second zone would extend west 250 feet from the first zone, and we used in that 250 feet only the land of the Sioux City Stock Yards Company."

The civil engineer for the Stock Yards Company testified:

"In order to get at the operation of this assessment to the particular piece in controversy, the expense of the entire job was determined; then that expense was spread over all abutting

property on a basis of zones. The property within 50 feet of the improvement was considered first-zone property. All property back of the first zone was considered second-zone property, and took one half the cost of the improvement.''

It further appears that the two engineers discovered a discrepancy in the original assessment, and revised the figures which were adopted by the trial court. Of this the city complains by appeal. In making the revision, they deducted the area which lies, or was supposed to lie, between the river front and the paving. The engineers, by reason of the indefinite field notes in their possession, ''had to assume an area.'' It was ''a more or less rough survey'' as to the actual amount of ground in the first zone lying between the paved road and the river.

There is no criticism as to the method of zoning for the purpose of assessment, and the question of benefits or values is not in the record before us. The assessments were established mathematically, in obedience to criteria adopted by the engineers; and it may be said that the answer to the problem presented for solution to them is the incidental result of a rule that, as a whole and on the average, was expected to work well.

Under the claims and contentions of the Stock Yards Company, the result ''is a farrago of irrational irregularities throughout,'' as was said by Justice Holmes in speaking of an ordinance under consideration in *Gast Realty & Inv. Co. v. Schneider Granite Co.,* 240 U. S. 55.

The essential evidential fact necessary for the determination of this case is conspicuous in its absence from the record, which wholly fails to show that other property in the district was not assessed for its pro-rata share of the cost. The record is silent as to any evidence tending to show that the bed of the Floyd River was benefited beyond the possibility of a mere nominal assessment, which for a failure to levy, this court cannot reverse.

2. MUNICIPAL CORPORATIONS: public improvements: assessment of river bed.

It must be conceded that the city had power to improve the highway in question and to assess the costs against ''all lots and parcels of land according to area so as to include one half of the privately owned property between the street improved and the next street whether such privately owned property abut upon said street or not but in no case shall privately owned

property situated more than 300 feet from the street so improved be so assessed.'' It is further provided:

"All property except streets, alleys, public highways, public driveways and property owned by the United States government shall be deemed privately owned property within the meaning of this section.'' Sec. 792-g, Supplemental Supplement Code, 1915.

. . The appellee property-owner cannot be heard to say that its property received *no* benefit from the improvement. The city council legally ordered the improvement, and ordered it paid by assessment upon the abutting property. The property owner, by its waiver of the statutory 25 per cent limitation, is not in a position to deny that its property should pay its due proportion of the necessary and reasonable cost of the improvement. There is nothing in the evidence from which it could be determined that the assessment made was inequitable or not proportionate to the cost. We do not construe the waiver as a surrender of all the rights of the Stock Yards Company, and as a consent that the whole cost of the improvement might be made upon its property, without reference to the benefits conferred upon other abutting or adjacent property. The reduction of the assessment against the Stock Yards Company by the trial court appears to have been made upon the theory that the city engineer, in preparing the schedule, was mistaken as to the area of the property owned by the Stock Yards Company. This mistake, if made, so far as the record shows, is wholly immaterial. The evidence on this point goes only to the manner of arriving at the amount to be laid upon the separate tracts of the Stock Yards Company. It is not disclosed what the total cost of the improvement is, nor what property other than the property of the Stock Yards Company was benefited by the improvement and subject to pay taxes for the improvement. In the absence of evidence to the contrary, we must presume that all of the property not involved in this controversy within the taxing district was assessed by the city council for the full benefit conferred thereon. The remaining cost of the improvement must necessarily be laid upon the property of the Stock Yards Company.

The estoppel pleaded by the city, predicated on the waiver of the company in securing the resolution of the council for the

improvement in question, does not preclude the right of the company to insist that its assessments should not be unreasonably excessive.   The trouble is that such abuse of power is not shown. Wherefore the cause is *reversed* upon the city's appeal and *affirmed* upon the cross-appeal.

All the justices concur.